IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00285-RM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

NICOLE SLIZESKI,
     a/k/a NICOLE LOHMEIER,

       Defendant.

## PLEA AGREEMENT

The United States of America, by and through Robert C. Troyer, Acting United States Attorney for the District of Colorado, and Martha Paluch, Assistant United States Attorney, and the defendant, Nicole Slizeski, personally and by counsel, Robert Pepin, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.    PLEA AGREEMENT

The defendant agrees to plead guilty to Count 5 of the Indictment, charging a violation of Title 18, United States Code, Section 1344(2), Bank Fraud. The defendant agrees to the appellate waiver, set forth fully below. The defendant agrees to pay restitution to JP Morgan Chase Bank in the approximate amount of $100,000, and Moritz Title Company in the approximate amount of $40,000. The specific amounts of restitution due to these entities will be provided to the Court prior to sentencing. The

Court's Exhibit

1

defendant also admits the forfeiture allegation as set forth in the Indictment and agrees that the forfeiture described therein is not excessive.

In exchange, the United States Attorney's Office for the District of Colorado ("the government") agrees to move at sentencing for dismissal of the remaining counts in the Indictment. The government also agrees to not file any additional charges in the District of Colorado against the defendant based on the information presently known to the government as outlined in the statement of facts below.

Provided the defendant does nothing inconsistent with accepting responsibility between the date of her plea hearing and the date of sentencing, the government will recommend that the defendant receive the maximum reduction for acceptance of responsibility.

The government agrees it will not seek a sentence greater than 27 months in prison.

This agreement is submitted to the Court for its consideration pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure. The parties are not bound to seek any particular sentence, although the advisory guideline range is estimated below.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria:

(1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 18; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II.     **ELEMENTS OF THE OFFENSE**

In order to be convicted of a violation of 18 U.S.C. 1344(2), Bank Fraud, the government would have to prove the following elements beyond a reasonable doubt:

First, the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution to obtain money from that financial institution by means of false or fraudulent pretenses, representations, or promises;

Second, the financial institutions at issue here were financial institutions within the meaning of the law, in that they were insured by the FDIC;

Third, the defendant acted with the intent to defraud; and

Fourth, the false or fraudulent pretenses, representations, or promises that the defendant made were material, meaning they would naturally tend to influence, or were capable of influencing the decision of the financial institution.

*Tenth Circuit Pattern Jury Instructions (Criminal Cases)* § 2.58 (2011).

### III.   STATUTORY PENALTIES

The maximum statutory penalty for a conviction of 18 U.S.C. § 1344(2), is as follows: Not more than 30 years of imprisonment; a fine of not more than $1,000,000, or both; not more than 5 years of supervised release; and a $100.00 special assessment fee. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV.   COLLATERAL CONSEQUENCES

The conviction may further cause the loss of certain civil rights, including, but not limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

### V.   STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties

disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began was in January of 2010.

At that time, the defendant was employed as an escrow manager at Moritz Title Company (MTC) in Denver, Colorado. In April of 2011, she began working at JP Morgan Chase Bank (JPM) in Englewood, Colorado, briefly as a processer and then became a closing team manager. While employed at Moritz Title and as a closing team manager at JP Morgan Chase, the defendant had authority to make wire transfers in relation to real estate transactions.

In February of 2012, the defendant was the JPM closing team manager for an internal refinance of an existing home mortgage loan for JPM customer, M.L. The refinanced amount, $114,017.22, was never applied to pay off M.L.'s first JPM home loan as directed. Instead, these funds were wired to Unified Title, a title company. The defendant emailed the title company, told them they received the funds in error, and directed them to wire the money to an alleged attorney's account, which Unified Title did. The alleged attorney's account was in fact an account held in the defendant's and her brother's names.

For almost a year, M.L. was threatened with foreclosure due to the nonpayment of her first mortgage. During that year, the defendant lied repeatedly to M.L. via email regarding the reasons for the nonpayment of M.L.'s mortgage. The defendant's embezzlement of these funds came to light in February of 2013 when M.L. emailed the defendant and received an out of office response which provided M.L. with the name of the defendant's supervisor.  The defendant's supervisor investigated the matter and discovered the defendant's embezzlement of these funds.  JPM then paid off M.L.'s prior mortgage and fired the defendant.

In an interview conducted by a JPM investigator, the defendant admitted to directing Unified Title to wire the $114,017.22 intended for M.L.'s first mortgage to an account in the defendant's and her brother's names. She admitted the same when interviewed by the FBI.  These facts form the basis of Count 5 of the Indictment, to which the defendant has agreed to plead guilty.

The FBI investigated this matter and discovered that the defendant engaged in the same or similar conduct while acting as an escrow manager for MTC.  Specifically, as set forth in Count 1, on January 19, 2010, after the sale of the defendant's home, she directed that $36,010.68 in M&T Bank funds intended to pay off her prior home equity loan with Chase Home Finance be deposited into her personal checking account ending in 8624. Later, in February 2010, the defendant wrote a check from the Moritz Title bank account in the amount of $39,010.68 payable to Chase Home Finance to pay off her home equity loan (plus interest) that should have been paid with proceeds from the sale of her home.

As set forth in Count 2, on July 26, 2010, after the refinance of A.T. and D.T.'s home loan, the defendant failed to forward $52,529.74 in First California Mortgage Company funds to pay off a prior mortgage owed by A.T. and D.T. and instead used a portion of those funds to make payments on her US Bank line of credit and credit card, and her Discover Card ending in 9383.

As set forth in Count 3, on August 9, 2010, after the sale of S.S.'s residence, the defendant failed to forward $80,746.69 in First California Mortgage Company funds to pay off a prior mortgage owed by S.S., and instead, used a portion of these funds to pay off the unpaid mortgage from the A.T. and D.T. transaction referenced in the prior paragraph.

As set forth in Count 4, on December 20, 2010, after the sale of D.P.'s residence, the defendant failed to forward $71,020.38 in Coldwell Banker Home Loans funds to pay off a prior mortgage owed by D.P. and instead, used a portion of these funds to pay toward S.S.'s unpaid mortgage referenced in the prior paragraph, and made a payment on her US Bank line of credit.

Also, on May 5, 2010, the defendant wrote a check out of the Moritz Title bank account in the amount of $756.25 payable to her Discover Card ending in 9383.

The total amount of funds misappropriated by the defendant's conduct was $355,080.96.

## VI. SENTENCING COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The base offense level is 7 pursuant to § 2B1.1(a)(1).

B. A 12-level increase applies pursuant to § 2B1.1(b)(1)(G) because the loss was more than $250,000, but less than $550,000.

C. A 2-level increase applies because the defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or concealment of the offense, pursuant to § 3B1.3.

D. The adjusted offense level is 21.

E. Pursuant to §3E1.1(a) and (b), provided the defendant does nothing inconsistent with accepting responsibility between the date of his plea hearing and the date of sentencing, the defendant should receive the full three-level reduction for acceptance of responsibility. The resulting total offense level would be 18.

F. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is ultimately determined by the Court.

      The information known to the parties shows that the defendant has prior criminal history. The defendant's criminal history category is tentatively estimated to be Category I.

G. Assuming the tentative criminal history facts above are accurate, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

H. The guideline range resulting from the government's estimated total offense level of 18, and the tentative Criminal History Category I, is 27-33 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 27 months (bottom of Category I) to 71 months (top of Category VI).

I. Pursuant to guideline §5E1.2, assuming the parties' estimated offense level of 18 is accurate, the fine range for this offense would be between $10,000 and $100,000, plus applicable interest and penalties.

J. Pursuant to §5D1.2(a)(1), if the court imposes a term of supervised release, that term shall be at least two but not more than five years.

K. The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

l. The defendant agrees to pay restitution to JP Morgan Chase Bank and Moritz Title Company in amounts to be specified by the government prior to sentencing.

M. The defendant agrees that an order of forfeiture shall issue in the form of a money judgment in an amount not to exceed the amount of restitution due.

-9-

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 3-8-17

_____
Nicole Slizeski a/k/a Nicole Lohmeier
Defendant

Date: 3-8-17

_____
Robert Pepin
Attorney for Defendant

Date: 3/8/17

_____
Martha A. Paluch
Assistant U.S. Attorney